UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DEVIN GRAY,

                              Plaintiff,

v.                                                                          9:18-CV-1408
                                                                             (GTS/TWD)
ELIZABETH WHITE, Nurse, Upstate Correctional
Facility; CORRECTIONS OFFICER BEANE;
CORRECTIONS OFFICER LOEB; NURSE MARLA
TRAVERS; NURSE HOLCOMBE; JANE DOES
#1-3, Nurses, Upstate Correctional Facility; and
JOHN/JANE DOES #1-10, Corrections Officers,
Upstate Correctional Facility,

                              Defendants.
_____

APPEARANCES:                                            OF COUNSEL:

ADAMS & COMMISSIONG LLP                    MARTIN E. ADAMS, ESQ.
   Counsel for Plaintiff
65 Broadway, Suite 715
New York, NY 10006

HON. LETITIA JAMES                                     AIMEE COWAN, ESQ.
Attorney General for the State of New York      Assistant Attorney General
   Counsel for all Defendants except Defendant Travers
300 South State Street, Suite 300
Syracuse, NY 13202

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

        Currently before the Court, in this prisoner civil rights action filed by Devin Gray

("Plaintiff") against Nurse Elizabeth White, Corrections Officer Beane, Corrections Officer

Loeb, Nurse Marla Travers, Nurse Holcombe, Jane Doe Nurses #1-3, and John and/or Jane Doe

Corrections Officers #1-10 ("Defendants"), is Defendants' motion to dismiss the Amended

Complaint for failure to state a claim upon which relief can be granted.  (Dkt. No. 31.)  For the reasons set forth below, Defendants' motion is granted.

## I.     RELEVANT BACKGROUND

### A.     Plaintiff's Amended Complaint

Generally, in his Amended Complaint, Plaintiff asserts two claims: (1) a claim that Defendants were deliberately indifferent to his serious medical needs and denied him adequate medical care by failing to examine and treat him for his reports of testicular swelling for more than 48 hours after he first requested care for that swelling; and (2) a claim that Defendants conspired to cover up their deliberate indifference and failure to provide adequate medical care. (Dkt. No. 22 [Pl.'s Am. Compl.].)

### B.     Parties' Briefing on Defendants' Motion to Dismiss

#### 1.     Defendants' Memorandum of Law

 Generally, in their motion to dismiss, Defendants make two arguments.  (Dkt. No. 31, Attach. 1, at 7-19 [Defs.' Mem. of Law].)  First, Defendants argue that Plaintiff's conspiracy claim should be dismissed because he included only vague and conclusory allegations about the existence of an agreement between Defendants and failed to even allege which Defendants specifically were involved in the conspiracy.  (*Id.* at 7-10.)  Defendants also argue that allegations that a prison employee has taken steps to conceal evidence of a past constitutional violation that is not ongoing do not alone state a cognizable constitutional claim.  (*Id.*)  In the alternative, Defendants argue that, because they all work for the same entity and were acting within the scope of their employment, the intracorporate conspiracy doctrine precludes Plaintiff's conspiracy claim against them.  (*Id.*)

2

Second, Defendants argue that Plaintiff's claim for deliberate indifference to a serious medical need must be dismissed because (a) Plaintiff has not alleged facts plausibly suggesting that Defendants were personally involved in the alleged constitutional violation, and (b) Plaintiff has not alleged facts plausibly suggesting either that Plaintiff made them aware of a serious medical condition that required treatment or that they acted intentionally or with deliberate indifference when confronted with knowledge of that serious medical condition. (*Id.* at 10-19.) More specifically, Defendants argue the following: (a) Plaintiff did not allege any involvement by Defendant Beane beyond the fact that he requested a sick call from Defendant Beane and subsequently had a visit with a nurse, and did not allege facts plausibly suggesting that Defendant Beane was aware that he was in pain or faced any substantial risk of serious harm; (b) Plaintiff did not allege facts plausibly suggesting that he told Defendant Loeb that he was suffering from a serious medical condition, or that Defendant Loeb was aware of a substantial risk of serious harm if Plaintiff was not provided treatment; and (c) Plaintiff did not allege facts plausibly suggesting that Defendants Holcombe and White should have inferred that Plaintiff had a serious medical need or that any failure to diagnose his testicular torsion was more than mere negligence, nor did he even allege which nurse Defendant was actually involved in the alleged denial of his request for care on October 5, 2016. (*Id.*)[1]

## 2. Plaintiff's Opposition Memorandum of Law

Generally, in his opposition memorandum of law, Plaintiff makes three arguments. (Dkt.

---

[1] Defendants note in their memoranda of law that Defendant Travers has not yet been properly served; the docket sheet reflects that she has not yet made an appearance in this action. (Dkt. No. 31, Attach. 1, at 5 [Defs.' Mem. of Law]; Dkt. No. 35, at 11 n.2 [Defs.' Reply Mem. of Law]; *see generally* Docket Sheet.)

No. 34, at 8-16 [Pl.'s Opp'n Mem. of Law].)  First, Plaintiff argues that he has asserted a valid conspiracy claim because he has alleged that Defendants all denied that he had made any requests for sick calls to protect themselves from liability.  (*Id.* at 8-10.)  Plaintiff also argues that the intracorporate conspiracy doctrine does not apply here because Defendants were motivated by an independent personal stake due to their desire to protect themselves from personal liability for the alleged constitutional violations.  (*Id.*)

Second, Plaintiff argues that he has asserted a plausible claim for deliberate indifference to his serious medical needs against all of the Defendants.  (*Id.* at 10-15.)  More specifically, Plaintiff argues that his allegations that he reported testicular swelling and pain plausibly suggest that Defendants were aware of, or should have inferred the existence of, his serious medical condition, and that he alleged that he was denied medical care for this condition for three days after he first requested care, the result of which was an eventual diagnosis of testicular torsion and surgical removal of his left testicle.  (*Id.*)  Plaintiff also argues that he has alleged facts plausibly suggesting that all Defendants were personally involved in the following ways: (a) he complained of testicular swelling and requested sick calls from Defendants Loeb and Beane and was never taken to a sick call by either Defendant; (b) he requested a sick call from Defendant Holcombe but was told by her to re-request a sick call for the next morning; and (c) he requested a sick call from Defendant Holcombe, White, or Travers (he is not sure which), but was not taken to a sick call with any of them.  (*Id.* at 14-15.)

Third, Plaintiff argues that, should the Court find that his claims are deficient, he should be granted leave to amend his Amended Complaint.  (*Id.* at 15-16.)

### 3.      Defendants' Reply Memorandum of Law

Generally, in their reply memorandum of law, Defendants make three arguments. (Dkt. No. 35, at 5-14 [Defs.' Reply Mem. of Law].) First, Defendants argue that Plaintiff's conspiracy claim must be dismissed because he has not alleged facts plausibly suggesting the existence of an agreement between any Defendants, and the Amended Complaint itself alleges that Defendants were acting within the scope of their employment, which precludes Plaintiff's argument that the intracorporate conspiracy doctrine does not apply. (*Id.* at 5-7.) Defendants also argue that the Court should not consider the evidence submitted with Plaintiff's opposition memorandum of law because it is not a part of or integral to the Amended Complaint. (*Id.*) Defendants additionally argue that Plaintiff has failed to oppose their argument (and thus has conceded) that taking steps to conceal a discrete past constitutional violation is not itself a cognizable constitutional claim. (*Id.*)

Second, Defendants argue that the deliberate indifference claims against all Defendants should be dismissed for many of the same reasons asserted in their memorandum of law-in-chief. (*Id.* at 8-13.)

Third, Defendants argue that Plaintiff should be denied leave to amend his Amended Complaint because he has not submitted a proposed Second Amended Complaint along with that request and his opposition memorandum of law does not explain the basis for, or nature of, the proposed amendments he would make. (*Id.* at 13-14.)

## II.     GOVERNING LEGAL STANDARDS

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds:

(1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212 n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing

6

Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 560-61, 577. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 555-70. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 555. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

7

129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (internal quotation marks and citations omitted). However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3)

8

documents that, although not incorporated by reference, are "integral" to the complaint, or (4)

any matter of which the court can take judicial notice for the factual background of the case.[2]

## III.   ANALYSIS

### A.   Whether Plaintiff Has Stated a Claim of Deliberate Indifference to a Serious Medical Need Upon Which Relief Can Be Granted

After careful consideration, the Court answers the above question in the negative for the

reasons stated in Defendants' memoranda of law.  (Dkt. No. 31, Attach. 1, at 13-19 [Defs.' Mem.

of Law]; Dkt. No. 35, at 8-13 [Defs.' Reply Mem. of Law].)  To those reasons, the Court adds the

following analysis.

---

[2]       *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

The Eighth Amendment prohibition against unnecessary and wonton infliction of pain can be violated by both a prison medical provider's deficient response to a prisoner's needs and a prison guard's actions in intentionally denying or delaying access to medical care or prescribed treatment. *Charles v. Orange Cnty.*, 925 F.3d 73, 85 (2d Cir. 2019). More specifically, to state a claim for deliberate indifference to a serious medical need, a plaintiff must allege facts that plausibly suggest that the defendant's actions meet both an objective and a subjective component: (1) as to the objective component, the alleged deprivation must be "sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists"; and (2) as to the subjective component, the deprivation must be the result of deliberate indifference (i.e., "an act or a failure to act . . . that evinces a conscious disregard of a substantial risk of serious harm"), which requires more than negligence. *Burroughs v. Mitchell*, 325 F. Supp. 3d 249, 273-74 (N.D.N.Y. 2018) (Hurd, J.). In other words, a plaintiff must allege that "(1) a prison medical care provider was aware of facts from which an inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference." *Burroughs*, 325 F. Supp. 3d at 274 (citing *Farmer v. Brennan*, 511 U.S. 825, 837 [1994]); *see Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) ("An official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk of inmate health or safety."). When assessing whether a medical condition is sufficiently serious, relevant factors include (a) "whether a reasonable doctor or patient would find it important and worthy of comment," (b) "whether the condition significantly affects an individual's daily activities," and (c) "whether it causes chronic and substantial pain." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). "A serious medical condition exists

10

where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Sloane v. Borawski*, 64 F. Supp. 3d 473, 492 (W.D.N.Y. 2014) (citing *Chance v. Armstrong*, 143 F.3d 698, 702 [2d Cir. 1998]).

Additionally, when a plaintiff asserts a medical indifference claim against a non-medical defendant, such as a corrections officer, that claim can be stated by alleging facts plausibly suggesting that the non-medical individual "intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problem known to the attendant prison personnel." *Burroughs*, 325 F. Supp. 3d at 274 (quoting *Baumann v. Walsh*, 36 F. Supp 2d 508, 512 [N.D.N.Y. 1999] [Scullin, J.]).

In the Amended Complaint, Plaintiff alleges the following facts: (1) on October 4, 2016, he made a request to Defendants Loeb and Beane for an emergency sick call "for swelling in his testicles"; (2) in response to this request, Defendant Holcombe told him "to sign up for sick call the following morning if swelling continued"; (3) on October 5, 2016, Plaintiff made a request for an emergency sick call to Defendant Holcombe, Defendant White, or Defendant Travers, but "was told the condition was not life threatening, and was given a non-aspirin pain reliever"; (4) on October 6, 2016, he signed up for a sick call complaining of testicular swelling, but Defendant Travers denied him medical treatment because he "was not up to receive medical attention"; (5) also on October 6, 2016, he made a request for an emergency sick call to Defendant Loeb, but he did not receive medical treatment; (6) on October 7, 2016, he made a request for an emergency sick call to Sergeant Vesneske, in response to which he was brought to sick call, examined, and transported and admitted to external hospitals, where he was assessed with a left testicular torsion; and (7) as a result of the "over 48 hour delay in treatment," he suffered irreparable

damage to his left testicle, which was then surgically removed while he was still at the hospital. (Dkt. No. 22, at ¶¶ 9-25 [Pl.'s Am. Compl.].)

Although Plaintiff states in one part of his opposition memorandum of law that he reported pain as part of his requests, there is no mention of any report of pain in the Amended Complaint; rather, the only symptom that he alleges he reported was swelling. The initial question is therefore whether testicular swelling, without any reports of pain or other symptoms, constitutes a serious medical condition. The Court finds that it is not.

Specifically, Plaintiff's allegations of testicular swelling do not rise to the level of conditions that have been found by courts to be sufficiently serious, nor does it appear to be a symptom that, by itself in the circumstances, is so alarming that a physician would think it worthy of special comment. *See Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003) (finding a genuine question of fact as to whether the plaintiff's facial scarring was a serious medical condition because it caused chronic pain for an extended period of time); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (finding that the plaintiff's dental condition was sufficiently serious where he alleged he had been in "great pain" for at least six months, was unable to chew properly, and the delay in treatment caused the need for multiple tooth extractions); *Dallio v. Hebert*, 678 F. Supp. 2d 35, 44-45 (N.D.N.Y. 2009) (Suddaby, J.) (finding that reported injuries such as cuts, bruises and pain sustained as a result of an excessive force incident did not constitute a sufficiently serious medical need) (collecting cases); *Davidson v. Scully*, 155 F. Supp. 2d 77, 84 (S.D.N.Y. 2001) (finding that tinnitus was not a serious medical need because the expert testimony established that it was not life threatening and did not cause pain, and that seasonal allergies with symptoms such as headaches, earaches, sinus congestion, soreness and

breathing problems were not a serious medical need because they did not produce death, degeneration, or extreme pain).

Although Plaintiff alleges that the failure to assess him and provide treatment in a timely manner resulted in the unnecessary loss of his testicle, he has failed to allege facts plausibly suggesting that Defendants should have recognized at the time he made his first request for treatment that his condition was sufficiently severe to merit such immediate assessment and treatment.  As already discussed, the Amended Complaint indicates only that Plaintiff reported testicular swelling; without any additionally reports of symptoms, the Court cannot say that Defendants should have been alerted to the fact that he had a testicular torsion and that he required immediate assessment or treatment.  Although a testicular torsion may in fact be a sufficiently serious condition in other circumstances, Plaintiff has not alleged facts plausibly suggesting that Defendants should have been aware that he was suffering from such a condition, much less that they were actually aware of facts from which they would have inferred the seriousness of his condition.

Plaintiff also has not alleged facts plausibly suggesting that Defendants' actions were taken with deliberate indifference.  "'[A] delay in treatment based on a bad diagnosis or erroneous calculus of risks and costs, or a mistaken decision not to treat based on an erroneous view that the condition is benign or trivial or hopeless, or that treatment is unreliable, or that the cure is as risky or painful or bad as the malady' will not constitute deliberate indifference." *Sloane*, 64 F. Supp. 3d at 493-94 (quoting *Harrison v. Barkley*, 219 F.3d 132, 139 [2d Cir. 2000]).  Here, Plaintiff's allegations do not plausibly suggest that Defendants' actions in failing to assess his condition sooner was anything more than "an erroneous view that the condition

13

[was] benign or trivial."

As already discussed, Plaintiff's Amended Complaint alleges that he reported only testicular swelling, for which one of the nurse Defendants prescribed him a pain reliever. The Amended Complaint also alleges that there was a period of approximately four days between his first complaint of testicular swelling and when he was finally seen at sick call, a span of time that does not plausibly suggest that Defendants were deliberately indifferent by ignoring Plaintiff's requests for treatment, especially given the fact that he alleges that he reported only testicular swelling. *See Alster v. Goord*, 745 F. Supp. 2d 317, 335 (S.D.N.Y. 2010) (finding that a failure to send the plaintiff to the hospital until two days after he first reported abdominal pain did not constitute deliberate indifference to a serious medical need because he was eventually taken to the hospital after his abdominal pain persisted). Additionally, as Defendants argue, the fact Plaintiff alleges that he was told he would have to wait to be seen and that one of the nurse Defendants (Plaintiff is unsure which) assessed Plaintiff's report of symptoms as "not life threatening" and prescribed him a pain reliever plausibly suggests that Defendants did not in fact draw an inference from Plaintiff's symptom reports that his condition created a substantial risk of serious harm. (Dkt. No. 22, at ¶¶ 9-13 [Pl.'s Am. Compl.].) Without further facts, the Court cannot find that the facts alleged plausibly suggest that Defendants recognized that Plaintiff's condition required prompt treatment such that Defendants' failure to provide quicker assessment and treatment was a result of deliberate indifference rather than mere negligence. *See Gomez v. Cnty. of Westchester*, 649 F. App'x 93, 95-96 (2d Cir. 2016) (finding that deliberate indifference standard was not met by a nurse's failure to diagnose a tooth infection where the nurse prescribed the plaintiff pain medication in response to his complaints of severe tooth pain and he was seen

14

by a dentist approximately four days later); *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)
("Deliberate indifference requires more than negligence, but less than conduct undertaken for the
very purpose of causing harm.").  The Court therefore finds that Plaintiff has not alleged facts
plausible suggesting that the nurse Defendants were deliberately indifferent to a serious medical
need when treating him.

      As to the claims asserted against Defendants Loeb, Beane, and any John or Jane Doe
corrections officers specifically, Plaintiff has not alleged facts plausibly suggesting that any of
these non-medical Defendants intentionally delayed access to medical care.  The Amended
Complaint instead alleges that (a) Plaintiff made a request for sick call to Defendants Loeb and
Beane on October 4, 2016, that was apparently relayed to Defendant Holcombe because she told
Plaintiff to sign up for sick call for the next morning; and (b) that he made a request for sick call
to Defendant Loeb on October 6, 2016, but "did not receive any medical treatment."  (Dkt. No.
22, at ¶¶ 9-10, 13 [Pl.'s Am. Compl.].)  Notably, Plaintiff does not allege, as to the October 6
request, that Defendant Loeb failed to relay his request to the medical staff (whether negligently
or intentionally), only that he did not receive treatment; such allegations do not plausibly suggest
that Defendant Loeb in any way contributed to a denial of medical care, much less that he did so
intentionally, particularly given that Plaintiff had been found to not require treatment in the
previous days by the medical Defendants after the corrections officer Defendants relayed his
requests for care.  Additionally, as to the October 6 request, Plaintiff does not allege that he told
Defendant Loeb the reasons for the sick call request at that time; he alleges merely that "he
requested emergency sick call."  (Dkt. No. 22, at ¶ 13 [Pl.'s Am. Compl.].)  Such factual
allegations do not plausibly suggest that Defendant Loeb was aware that Plaintiff had a serious

medical need at that time.  As a result, the Court finds that Plaintiff has not alleged facts plausibly suggesting that the corrections officer Defendants were deliberately indifferent to any serious medical need in violation of the Eighth Amendment.

For all of the above reasons, the Court finds that Plaintiff's Eighth Amendment claim for deliberate indifference to a serious medical need must be, and is, dismissed.

### B.    Whether Plaintiff Has Stated A Claim of Conspiracy Upon Which Relief Can Be Granted

After careful consideration, the Court answers the above question in the negative for the reasons stated in Defendants' memoranda of law.  (Dkt. No. 31, Attach. 1, at 7-10 [Defs.' Mem. of Law]; Dkt. No. 35, at 5-7 [Defs.' Reply Mem. of Law].)  To those reasons, the Court adds the following analysis.

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).

"The two essential terms of a § 1983 claim are (1) an act under the color of state law, and (2) a deprivation of a right secured under the Constitution as a result of that act."  *AYDM Assocs., LLC v. Town of Pamelia*, 205 F. Supp. 3d 252, 274 (N.D.N.Y. 2016) (D'Agostino, J.).  Thus, where a plaintiff's substantive claims alleging a constitutional violation are dismissed, any claim for a § 1983 conspiracy must also be dismissed.  *AYDM Assocs., LLC*, 205 F. Supp. 3d at 274; *see Miller v. Annucci*, 19-CV-0030, 2019 WL 2370295, at *14 (N.D.N.Y. June 5, 2019) (Kahn, J.) ("A plaintiff's §§ 1983 or 1985 conspiracy claim fails if he is unable to allege the underlying

constitutional violation.").

Because the Court has already found that Plaintiff has failed to allege facts plausibly suggesting an Eighth Amendment violation, the Court also finds that Plaintiff cannot state a conspiracy claim upon which relief can be granted.  As a result, the Court grants Defendants' motion to dismiss also as to Plaintiff's conspiracy claim pursuant to 42 U.S.C. § 1983.

**C.      Whether Plaintiff Should Be Granted Leave to Amend His Amended Complaint**

After careful consideration, the Court answers this question in the negative for the following reasons.

A court should "freely give leave [to amend a complaint] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, the Court is not required to grant leave to amend where such amendment would be futile, or, in other words, when any amendment would not be able to withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *Byerly v. Ithaca Coll.*, 290 F. Supp. 2d 301, 305 (N.D.N.Y. 2003) (Scullin, C.J.).  In determining whether amendments to the complaint would be futile, the Court may consider not only proposed amendments submitted by the plaintiff, but also "all possible amendments" that could be made.  *Panther Partners Inc. v. Ikanos Commications, Inc.*, 347 F. App'x 617, 622 (2d Cir. 2009).

As an initial matter, the Court rejects Plaintiff's attempt to argue that any amendment to the Amended Complaint should be treated essentially as a first opportunity to amend (rather than a second opportunity) because the Amended Complaint "contains no causes of actions or claims against the original defendants, and is actually a new complaint."  (Dkt. No. 34, at 6 [Pl.'s Opp'n Mem. of Law].)  This argument is facially disingenuous.

17

To be sure, Plaintiff chose to voluntarily forgo many of his originally asserted claims, which resulted in the dismissal of many of the originally named defendants.  However, Defendant White was named as a defendant in the original Complaint and continues to be named as a Defendant in the Amended Complaint.  Plaintiff's original Complaint also included nearly identical factual allegations (other than naming the defendants that were previously classified as John or Jane Does) pertaining to the events relevant to his current claims, including alleging that it was Defendants' "intentional failure" that caused Plaintiff to lose his left testicle.  (Dkt. No. 1, at ¶¶ 55-64 [Pl.'s Compl.].)  Plaintiff had also asserted claims for denial of medical care and conspiracy to inflict constitutional injuries (although not specifically as to a cover up of the denial of medical care related to his testicular torsion) in his original Complaint.  (*Id*. at ¶¶ 72-73, 79-80.)  Consequently, to the extent that there is any benefit to treating his request for a first effort to amend as opposed to a second effort to amend, Plaintiff is not entitled to any such benefit.

Although the Court may (under the circumstances) not consider the documents attached to Plaintiff's opposition memorandum of law when considering the sufficiency of the allegations in the Amended Complaint, it can, and does, consider those documents when determining whether allowing Plaintiff to amend the Amended Complaint would be futile because they represent additional facts that Plaintiff would be able to add to his allegations.  In particular, Plaintiff has provided a copy of a sick call request form from October 5, 2016, in which he writes "'My left testicle is severely swollen and hurts real bad."  (Dkt. No. 34, Attach. 2, at 1.)  This suggests that Plaintiff could allege that he reported not only swelling, but also pain, at least on one of the dates he alleged he made a sick call request.

However, even if Plaintiff could add factual allegations that he reported pain to Defendants in addition to swelling, the Court is not convinced that Plaintiff has shown that he could plead facts to plausibly suggest that Defendants acted with deliberate indifference.  In particular, even if Plaintiff alleged that he reported both pain and swelling starting on October 4, he has also already alleged that he was prescribed a pain reliever on October 5 in an effort to alleviate his symptoms, and that he was then subsequently seen and treated on October 7, only four days after his first report of symptoms.  (Dkt. No. 22, at ¶¶ 9-15 [Pl.'s Am. Compl.].)  Thus, even with additional factual allegations about pain, there is no indication that Plaintiff could allege facts plausibly suggesting that Defendants' actions were taken with deliberate indifference, given the short length of time, the provision of pain medication, and the absence of any factual allegations that Defendants were actually aware that Plaintiff had a condition that required swift medical intervention

In addition, the Court notes that, in requesting to amend the Amended Complaint, Plaintiff does not offer any indication as to what amendments he would seek to make.  Although the Court disagrees with Defendants' argument that Plaintiff was required to submit a proposed Second Amended Complaint along with his response to Defendants' motion (given that it would be illogical to require Plaintiff to foresee the ways in which this Court would find his Amended Complaint defective), his failure to even hint at the potential ways in which he might be able to remedy the defects in the Amended Complaint raised by Defendants in their motion weighs against the request to amend.  In particular, as discussed above, Plaintiff has not reasonably indicated that he can allege facts that would plausibly suggest that Defendants' failure to grant him a sick call assessment, diagnose him with a testicular torsion, or send him to the hospital

19

sooner was done with deliberate indifference, or that they recognized that his testicular pain and swelling required urgent care but intentionally did nothing.  Nor has Plaintiff alluded to any reason that he was unable to include all relevant allegations at his disposal when the Amended Complaint was filed; the Court notes both that Plaintiff has been represented by counsel at all stages of this litigation and that Plaintiff has not pointed to any more recently discovered facts that were not available to him at the time the Amended Complaint was filed.

Because Plaintiff is ably represented by counsel, has already availed himself of the opportunity to amend his Complaint once, and has not reasonably indicated that he could allege additional facts to plausibly a valid claim under the Eighth Amendment, the Court finds that it need not afford Plaintiff a further opportunity to amend the Amended Complaint before dismissal.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 31) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 22) is **DISMISSED** for failure to state a claim, **EXCEPT** for his claims against Defendant Travers, which **SHALL BE** (without further Order of this Court) **DISMISSED without prejudice** for failure to serve under Fed. R. Civ. P. 4(m) **UNLESS**, within **SEVEN (7) DAYS** of the date of this Decision and Order, Plaintiff **SHOWS CAUSE** in writing as to why those claims should not be dismissed without prejudice for failure to serve.[3]

---

[3]     The Court finds that Defendants gave Plaintiff adequate notice of his failure to serve Defendant Travers.  (*See, e.g.,* Dkt. No. 31, Attach. 1, at 5 [attaching page "1" of Defs.'

Dated: July 27, 2020
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge

---

Mem. of Law].)  However, out of an abundance of caution, the Court again hereby gives Plaintiff
such notice.

21